## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| ANTHONY J. MUSE, a/k/a TONY MUSE,<br><br>Plaintiff,<br><br>vs.<br><br>BRAVO SPORTS, d/b/a HYPERWHEELS,<br><br>Defendant. | **No. 4:04-cv-00571**<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S ALTERNATIVE MOTION FOR JURISDICTIONAL DISCOVERY** |

Currently pending before the Court are Defendant's Motion to Dismiss (Clerk's No. 5) and Plaintiff's Alternative Motion for Jurisdictional Discovery (Clerk's No. 10). Attorneys for Plaintiff are Steve Durick and Anne Updegraff; attorney for Defendant is Brian Rickert. Neither party requested oral argument, and the Court finds no hearing is necessary.

### PROCEDURAL HISTORY

Plaintiff Anthony J. Muse, a/k/a Tony Muse ("Muse"), filed the present case against Defendant Bravo Sports, d/b/a Hyperwheels ("Bravo Sports"), in the Iowa District Court for Polk County. Defendant removed the action to this Court on October 22, 2004, with diversity jurisdiction as the basis for removal. In the filed petition, Muse, an Iowa citizen, alleges Bravo Sports, a California corporation with its principal place of business in Cypress, California, misappropriated Plaintiff's name

and likeness without obtaining his permission or consent.  Bravo Sports then filed a

pre-answer motion to dismiss on December 3, 2004, seeking dismissal for lack

of jurisdiction.

## BACKGROUND FACTS

Muse is a highly renowned inline skater with numerous world titles, medals,

and championships.  He currently resides in West Des Moines, Iowa, where he owns

and operates Skate West, an indoor skating facility that also sells inline skate products

and accessories.  Muse has been involved in the inline skating industry as an athlete,

competitor, and business owner and operator for over twenty years.

Bravo Sports is a California corporation with its principal place of business in

Cypress, California.  Bravo Sports manufactures, sells, and distributes inline skates

and skating products to distributors in and out of California.  Those distributors then

sell Bravo Sports' products to their customers.  Hyperwheels is a trademark and

division of Bravo Sports.  Bravo Sports also owns and operates a skating product line

known as Kryptonics.

Muse had a sponsorship agreement with Kryptonics that expired December 31,

1997.  During this time, Bravo Sports acquired Kryptonics.  A lawsuit was filed and

settled after Bravo Sports continued to use Muse's name, image, and likeness in

advertisements on the Internet and in written publications after the expiration of the

sponsorship agreement and without Muse's authority or permission.  Following resolution of that lawsuit, Kryptonics and Bravo Sports discontinued use of Muse's likeness to promote their products.

In 2001 and 2002, Muse's image was published in advertisements in RC Sports catalogs to promote Hyperwheels products.  Bravo Sports claims that RC Sports independently created and distributed the Hyperwheels advertisement at issue, while Muse claims that RC Sports informed him that Bravo Sports provided the advertisement to RC Sports and directed RC Sports to run the advertisement in 2001 without any direction to discontinue the advertisement in 2002.  Muse commenced the present lawsuit, alleging Bravo Sports misappropriated his name, image, and likeness in the RC Sports catalogs.

## ANALYSIS

Bravo Sports filed its motion to dismiss, arguing this Court does not have personal jurisdiction over Defendant and further that this Court is not the proper venue for the present action.  Consequently, Bravo Sports contends this action must be dismissed with costs assessed to Plaintiff.  Plaintiff counters by arguing that the Court does have personal jurisdiction over Bravo Sports and that venue is proper.  In addition, Muse has filed an alternative motion for jurisdictional discovery should the Court determine a *prima facie* case of personal jurisdiction has not been made.

3

**A.**    **Admissibility of Evidence in Plaintiff's Resistance**

Before discussing the jurisdictional issues, the Court must first address Defendant's assertion that Plaintiff's resistance contains inadmissible evidence that the Court must disregard.  Bravo Sports points to several items from Muse's resistance that it contends would not be admissible and should therefore be disregarded in assessing the viability of Defendant's motion to dismiss.

Bravo Sports first points out that Muse addresses a lawsuit that the parties to this action settled years ago and contends this has no relevance to the present matter. Bravo Sports next identifies several statements made by Muse to support jurisdiction over Bravo Sports and contends that they are based on hearsay or layers of hearsay, and that Plaintiff is neither competent to make such statements nor does he have any basis for such an opinion.  In short, Bravo Sports requests the Court disregard Plaintiff's guesses and presumptions in determining jurisdiction, and that upon so doing, the Court will be left with little evidence in support of jurisdiction.

The Court will take the Defendant's contentions into consideration upon weighing the arguments presented by Muse.  The Court notes, however, that while Plaintiff first references the prior lawsuit between the parties, Defendant did refer to the prior contract and relationship between the parties, and these dealings are potentially relevant to the pattern of conduct argument advanced by Plaintiff.  In addition,

4

while the majority of Plaintiff's statements that Defendant opposes are in fact con-

clusions that Plaintiff promotes, there is nothing to prevent a party, in a persuasive

brief, from demonstrating inferences it hopes the Court will accept.  The Court will

assess the evidence behind such statements and make considered determinations on

the viability of Plaintiff's arguments.

**B.    Personal Jurisdiction Standards**

When personal jurisdiction is challenged, Plaintiff bears the burden of proving

that such jurisdiction exists.  Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072

(8th Cir. 2004); Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102

(8th Cir. 1996).  "To survive a motion to dismiss for lack of personal jurisdiction, the

plaintiff need only make a prima facie showing of personal jurisdiction over the defen-

dant."  Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d

519, 522 (8th Cir. 1996).

Despite Plaintiff's ultimate burden of proof on the issue of personal jurisdiction,

"jurisdiction need not be proved by a preponderance of the evidence until trial or until

the court holds an evidentiary hearing."  Dakota Indus., Inc. v. Dakota Sportswear,

Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citing Cutco Indus., Inc. v. Naughton, 806

F.2d 361, 365 (2d Cir. 1986)).  If an evidentiary hearing is not held, the Court accepts

the facts alleged in the complaint as true and views the facts in the light most

5

favorable to the nonmoving party.  <u>Wells Dairy, Inc. v. Estate of Richardson</u>, 89 F.

Supp. 2d 1042, 1047-48 (N.D. Iowa 2000) (citations omitted).

A federal court sitting in diversity performs a two-pronged analysis to determine

if personal jurisdiction over a foreign defendant is permissible.  <u>Dakota Indus., Inc</u>,

946 F.2d at 1387.  First, the Court looks at whether jurisdiction is proper under the

state's long-arm statute.  <u>Id.</u>  Second, if the activities of the Defendant meets the

requirements of the statute, the Court next determines if the exercise of jurisdiction

comports with due process.  <u>Id.</u>

> Iowa's jurisdictional statute states in pertinent part,

> Every corporation, individual, personal representative, partnership or
> association that shall have the necessary minimum contact with the state
> of Iowa shall be subject to the jurisdiction of the courts of this state, and
> the courts of this state shall hold such corporation, individual, personal
> representative, partnership or association amenable to suit in Iowa in
> every case not contrary to the provisions of the Constitution of the
> United States.

Iowa Rule 1.306.  The long-arm statute "expands Iowa's jurisdictional reach to the

widest due process parameters of the federal constitution," therefore, the Court need

only consider whether the exercise of jurisdiction comports with due process.  <u>See</u>

<u>also</u> <u>Hodges v. Hodges</u>, 572 N.W.2d 549, 552 (Iowa 1997) (citing <u>Larsen v Scholl</u>,

296 N.W.2d 785, 787 (Iowa 1980)).

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Digi-Tel Holdings, Inc., 89 F.3d at 522. "Sufficient contacts exist when 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there . . . .'" Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996) (quoting World-wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 291-92 (1980)).

"'[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . .'" Id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). If the contacts result from the Defendant's own actions, it creates a "substantial connection" with the forum State, and jurisdiction is proper. Digi-Tel Holdings, Inc., 89 F.3d at 522.

7

To determine if due process is satisfied, the Eighth Circuit employs a five-

factor test.  Dakota Indus., Inc., 946 F.2d at 1390.  The court considers,

> (1) the nature and quality of the contacts with the forum state; (2) the
> quantity of the contacts with the forum state; (3) the relation of the
> cause of action to the contacts; (4) the interest of the forum state in
> providing a forum for its residents; and (5) the convenience of
> the parties.

Id. (citing Land-O-Nod Co. v. Bassett Furniture Indus., 708 F.2d 1338, 1340 (8th

Cir. 1983)).

The first three factors are given primary importance; the last two are secon-

dary.  Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003).  The first

three factors are closely interrelated and considered together.  Digi-Tel Holdings, Inc.,

89 F.3d at 523.  In considering the Defendant's contacts with the forum, the Court

looks at those contacts in the aggregate, not individually, and weighs the totality of the

circumstances.  Northrup King Co. v. Compania Productora Semillas Algodoneras

Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

The Eighth Circuit has elaborated on the third factor, the relationship between

the contacts and the cause of action, distinguishing between general and specific juris-

diction.  Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir. 1994)

(citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8-9

(1984)).  "General jurisdiction refers to the power of a state to adjudicate any cause

8

of action and does not depend on the relationship between the cause of action and the contacts." Burlington Indus., Inc., 97 F.3d at 1103 (citing Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 n. 4 (8th Cir. 1995)).  To determine whether general jurisdiction exists, the Court will look at whether the Defendant's contacts with the state are "continuous and systematic general business contacts." Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 416 (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952)).

Specific jurisdiction on the other hand, "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . .'" Bell Paper Box, Inc., 22 F.3d at 819 (quoting Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir. 1993)).  To determine whether specific jurisdiction exists, the Court will look at the relationship between Plaintiff's claims and Defendant's activities within the forum.  Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991).

## C.    Defendant's Motion to Dismiss

### 1.   General Jurisdiction: Nature, Quantity, and Quality of Contacts

Bravo Sports contends that this Court lacks personal jurisdiction and builds its argument on normal indicia of contacts that are lacking.  According to Defendant, Bravo Sports is a California corporation that does not maintain offices in Iowa, has no employees in Iowa, does not own real property or have bank accounts in Iowa, does

not advertise or distribute catalogs in Iowa, and is not registered to do business in Iowa.  Bravo Sports asserts its last date of business with its sole Iowa account, at Play It Again Sports in Iowa City, occurred in August 2002, and in any case this relation-ship is unrelated to the allegation in the present case.

Bravo Sports also contends that it has no ownership in, affiliation with, or any other connection with RC Sports, the party running the offending advertisement, beyond the fact that RC Sports is a distributor of Bravo Sports' products.  Bravo Sports contends it did not authorize, consent to, or have any knowledge of the RC Sports' advertisement.  Finally, the only contact between Bravo Sports and Muse, they argue, was the sponsorship agreement with Kryptonics, which subsequently became a division of Bravo Sports, which resulted in the Colorado lawsuit detailed above.  Bravo Sports contends that no further business has taken place between the parties or their affiliates since that time.

Accordingly, Bravo Sports argues that review of the five factors for jurisdiction will result in the conclusion that the nature, quality, and quantity of Defendant's con-tacts with Iowa are minimal at best, and the source and connection of the cause of action with those contacts is not present at all.  Further, Defendant points out that all witnesses are located outside of Iowa and it would be inconvenient to bring them all here for trial in the present matter.  In short, Bravo Sports asserts that while Iowa

10

may have some interest in providing a forum for its residents, all other factors weigh so heavily against jurisdiction that this aspect is minimal.

Muse, on the other hand, asserts the Court has general jurisdiction over the present matter.  Muse points to Bravo Sports' website, its business conduct with Iowa businesses, and the RC Sports catalog as evidence that Bravo Sports has the requisite contacts with this forum.

Indeed, general jurisdiction may be obtained over a nonresident defendant when that defendant's website is interactive.  See Zippo Mfg. Co. v. Zippo.com, Inc., 852 F. Supp. 1119, 1124 (W.D. Penn. 1997).  In determining whether a website creates general jurisdiction over a nonresident defendant, the Eighth Circuit employs the Zippo test in categorizing the type of website along with a quantity of contacts test in which the Court examines the number of contacts the website has with residents of the foreign jurisdiction.  Lakin v. Prudential Securities, Inc., 348 F.3d 704, 712-13 (8th Cir. 2003).  As one court stated, "the constitutionality of a State's exercise of jurisdiction is proportionate to the nature and quality of the commercial activity the defendant conducts over the internet."  Metcalf v. Lawson, 802 A.2d 1221, 1225 (D.N.H. 2002).

Zippo created three categories of websites based on the level of interaction between the web browser and the company behind the site.  Zippo, 852 F. Supp. at

11

1124.  The first category is an interactive website in which the defendant enters into contracts with residents of a foreign jurisdiction that involve the known and repeated transmission of computer files over the Internet.  <u>Id.</u>  This interactive website clearly creates personal jurisdiction over the defendant.  <u>Id.</u>  On the other end of the spectrum is the second category where the website is simply passive and does little more than provide information.  <u>Id.</u>  This passive website clearly does not confer personal jurisdiction.  <u>Id.</u>  The third "middle" type of website involves exchanging some information with a host computer but does not rise to the level of an interactive website.  <u>Id.</u>  With this type of website, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website."  <u>Id.</u>

Muse asserts the Bravo Sports website is an interactive website that confers personal jurisdiction over Bravo Sports.  According to Muse, the Bravo Sports website allows for business transactions, including entering into contracts with residents of foreign jurisdictions, and encourages downloading of files.  Website browsers are invited to make online purchases of products at the "Pro Shop", and are invited to download various Bravo Sports division catalogs.  The website contains extensive advertisements, and product pictures and specifications are readily available.  In addition, users of the website are invited to contact division sales departments or other

representatives by phone or e-mail, and the website allows users to locate "authorized dealers" by state.  Ability to view new products and see other dealer specific information is available on the website for dealers.  Muse argues that the foregoing demonstrates the extensive interactive nature of the Bravo Sports website and requires classification of Bravo Sports' website in the first <u>Zippo</u> category as an interactive website.[1]

Muse next contends the quantity of contacts portion of the Eighth Circuit analysis also weighs in favor of general jurisdiction.  According to Muse, Bravo Sports could clearly have continuous and significant contacts with Iowa residents as it is available 24 hours a day to potential Iowa customers and Bravo Sports anticipated the website being used by Iowa residents because it provides a list of "authorized dealers" located in Iowa.  While Bravo Sports alleges it has "no record of any transactions specific to residents of Iowa from its website," Muse asserts it is reasonable to infer that Bravo Sports intended for Iowa residents to use the website as evidenced by the list of "authorized dealers" located in Iowa.[2]  In short, Muse contends that the

---

[1] Under the specific jurisdiction analysis, an interactive website alone would confer jurisdiction if the cause of action was related to the website.  In the instant case, however, the alleged misappropriation of Muse's image did not take place on the website.  Accordingly, the Court is required to continue with the general jurisdiction analysis.  <u>See</u> <u>Lakin</u>, 348 F.3d at 704.

[2] Muse also contends he has no way to rebut this assertion without jurisdictional discovery.  This issue will be discussed further <u>infra</u>.

13

interactive nature of the website and Bravo Sports advertisement of Iowa "authorized dealers" establishes a *prima facie* case of jurisdiction requiring Defendant's motion be denied.

Bravo Sports admits the Hyperwheels website is accessible to residents of Iowa simply by being in cyberspace but denies that it is of sufficient interactivity to warrant jurisdiction.  In fact, Bravo Sports asserts it has no record of any transactions with Iowa residents stemming from its website.  Moreover, the website is unrelated to the allegations set forth in Plaintiff's complaint before this Court.

Muse next argues that the fact that Bravo Sports previously sold products directly to Iowa businesses is sufficient to allow for jurisdiction over Defendant.  The required contacts with the forum state supporting exercise of personal jurisdiction over a nonresident defendant must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to filing suit.  Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003).  The alleged cause of action in the present case arose with the publication and distribution of the RC Sports catalog in 2001 and 2002, and the lawsuit was filed on September 10, 2004.

Muse points out that Defendant admits to having an account with Play it Again Sports in Iowa City, with the last date of business being transacted on August 16,

14

2002.  In addition, Muse asserts and provides proof that Skate West, the business he owns, conducted business directly with Bravo Sports from at least 1999 through 2002.  Moreover, Muse asserts that Bravo Sports' website listing Iowa "authorized dealers" is an admission of doing business with 18 Iowa businesses during the relevant time period.  Muse demonstrates by affidavit that Irwin's Bikes and Sports currently does business with Bravo Sports and contends the Scheel's stores located in Iowa likely also buy directly from Bravo Sports based on their size and type of business.  As such, Muse argues that Bravo Sports has had continuous and systematic contact consisting of direct sales to retailers in Iowa at all times relevant to determination of jurisdiction over the present matter.

Bravo Sports counters that it has not conducted business within Iowa since 2002, when it last transacted with Play It Again Sports in Iowa City.  Further, this business was completely unrelated to this matter.  Finally, Bravo Sports contends it does not advertise within the state of Iowa.  The catalog in question was in fact distributed by RC Sports and not Bravo Sports.  While acknowledging a past business relationship with Play It Again Sports (and denying any business transactions with Skate West), Bravo Sports asserts such limited contacts do not rise to the level of continuous and systematic.

Finally, Muse contends the RC Sports catalog confers personal jurisdiction over Bravo Sports for purposes of this action.  Indeed, when a manufacturer provides its products to a regional distributor, and it is foreseeable that the product will be purchased by consumers in a forum state, personal jurisdiction is conferred over the manufacturer.  See Dever, 380 F.3d at 1075; Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 948 (8th Cir. 1998); Barone v. Rich Bros. Interstate Fireworks Co., 25 F.3d 610, 613-14 (8th Cir. 1994).  This is because when a foreign distributor "pours its product" into a regional distributor with the expectation of penetrating a discreet, multi-state trade area, the manufacturer has purposefully reaped the benefits of the laws of the states in the trade area for due process purposes. Vandelune, 148 F.3d at 948 (citing Barone, 25 F.3d at 615).

RC Sports is located in Lenexa, Kansas, and distributes Bravo Sports' products to Midwest states, including Iowa.  Due to Kansas' proximity to Iowa, Muse argues it is reasonable to infer that Bravo Sports placed its products into the stream of commerce with the expectation that RC Sports would penetrate the Iowa market.  Muse contends it is reasonable to infer that Bravo Sports knows its products are distributed in Iowa by RC Sports and further that Bravo Sports derived economic benefits from RC Sports' efforts in Iowa.  In other words, Muse argues it was foreseeable to Bravo

Sports that its products would infiltrate Iowa through its distributor, and therefore, personal jurisdiction over Bravo Sports exists.

Bravo Sports concludes by arguing that it is insufficient for Muse to argue that Defendant "*could have* continuous and significant contacts with Iowa residents." Bravo Sports contends Muse has failed to meet his burden to demonstrate jurisdiction in the present matter.  Instead, Bravo Sports asserts that Muse relies upon conclusory statements in his pleadings and cites to inadmissible evidence to support his claims, which is not enough.  See Dever, 380 F.3d at 1074 ("After defendants challenged the exercise of personal jurisdiction, [plaintiff] failed to rebut their assertions with testimony, affidavits, or other documents.  Instead, he rested on the conclusory allegations in his complaint to establish minimum contacts.  Where the assertion in a plaintiff's complaint are contested, this is not enough.  Because [plaintiff] failed to make a prima facie showing that these defendants had "continuous and systematic" contacts with the forum state, the district court had no basis to exercise general personal jurisdiction over them.").  As a result, Bravo Sports contends its motion to dismiss must be granted.

## 2.   Specific Jurisdiction: Relation of the Cause of Action to the Contacts

Muse also contends the advertisement in the RC Sports catalog which allegedly misappropriated his likeness confers specific jurisdiction.  In determining specific

jurisdiction, the Eighth Circuit resorts to the "effects test" as set forth by the Supreme

Court.  See Hicklin Eng'g v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir. 1992) (citing

Calder v. Jones, 465 U.S. 783 (1984)); Dakota Indus., Inc., 946 F.2d at 1390-91

(citing Calder, 465 U.S. 783).  The Eighth Circuit held the "effects test" is an addi-

tional factor to consider when evaluating a potential defendant's relevant contacts with

the forum state.  Dakota Indus., Inc., 946 F.2d at 1390-91.  In other words, without

additional contacts, the "effect" alone will not confer personal jurisdiction.  Hicklin

Eng'g, Inc., 959 F.2d at 739.

The "effects test" permits the assertion of personal jurisdiction over a nonresi-

dent defendant whose acts "are performed for the very purpose of having their conse-

quences felt in the forum state."  Dakota Indus., Inc., 946 F.2d at 1390-91.  In other

words, the Court may find personal jurisdiction over a foreign defendant when it

knew its contact would have a "potentially devastating impact" upon the plaintiff and

knew that the brunt of the injury would be felt in the state where the plaintiff resides.

Calder, 465 U.S. at 789-90.  Under these circumstances, the defendant must "reason-

ably anticipate being haled into court" for its conduct.  Id.  Thus, an individual need

not go to a foreign jurisdiction to seek redress from persons who knowingly cause the

injury in the plaintiff's state of residence.  Id.

Specific jurisdiction can be conferred when the "defendant's only contact with the forum state is the purposeful direction of a foreign act having effect in that state." Haisten v. Grass Valley Med. Reimbursement, 784 F.2d 1392, 1397 (9th Cir. 1986). The purposeful contact or substantial connection requirement is satisfied when an intentional tortfeasor "knew that the major impact of the injury would be felt in the forum state." Id. This is because there is a "sharp distinction between the 'mere untargeted negligence' and 'intentional and allegedly tortious actions' aimed at the forum state." Dakota Indus., Inc., 846 F.2d at 1390-91 (citing Calder, 465 U.S. at 789). While lack of control over product distribution in the forum state "may weigh against jurisdiction in a negligence action, . . . lack of control will not bar jurisdiction where the plaintiff has alleged an intentional tort." Id. (citing Calder, 465 U.S. at 789-90).

Muse's cause of action is misappropriation of name or likeness, which is a category of the intentional tort of the invasion of privacy. See Restatement (Second) of Torts § 652.A and Comments (1976); see also Calder, 465 U.S. at 789 (involving the intentional tort of defamation); Dakota Indus., Inc., 846 F.2d at 1390-91 (involving the intentional tort of trademark infringement). Accordingly, Muse asserts that Bravo Sports cannot rely on its lack of control over product distribution in Iowa to avoid personal jurisdiction. In addition, Muse contends Bravo Sports directed RC

19

Sports to run the improper advertisement, despite having been previously sued for the identical misconduct (i.e., using Muse's likeness in advertisement without permission), and was aware the RC Sports catalogs are circulated in Iowa to retailers and consumers.  Muse further argues that Bravo Sports would have been aware of Muse's place of residence from past dealings with Muse and his business, Skate West.  Muse argues that it would have been foreseeable to Bravo Sports that the brunt of Muse's injury would be felt in Iowa.  As a result, Muse contends the "effects test" plus the additional contacts Bravo Sports has with Iowa, as discussed supra, confers personal jurisdiction.

In its reply, Bravo Sports incorrectly claims that Muse "admits this advertisement does not establish specific jurisdiction in this Court."  In actuality, Muse merely states the website alone does not confer specific jurisdiction because the offending advertisement did not appear on the website.  Muse then goes on to argue specific jurisdiction based on the advertisement disseminated by RC Sports.  Bravo Sports is correct, however, in asserting that the advertisement was created and distributed in Kansas, and the only connection to Iowa is based on the allegation that said advertisement made its way into Iowa thereby causing harm to Muse and his business in Iowa.

### 3.  Due Process Considerations

Once a *prima facie* case of minimum contacts has been established, the Court must determine whether an assertion of jurisdiction would be reasonable and not offend notions of "'fair play and substantial justice.'"  Lakin, 348 F.3d at 713 (quoting Int'l Shoe, 326 U.S. at 316).  In undertaking this determination, the Court must consider the following: (1) the burden on Bravo Sports; (2) the interests of Iowa; (3) Muse's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in further fundamental substantive social policies.  See id. (citations omitted).

Muse asserts these considerations weigh in favor of finding personal jurisdiction over Bravo Sports is reasonable.  Muse argues that Iowa has a substantial interest in adjudicating this claim as the advertisement at issue was knowingly circulated in Iowa and the brunt of the injury to Muse was felt in Iowa.  Muse further asserts the burden on Bravo Sports to travel to Iowa is not overbearing.  In addition, Muse contends the fact Bravo Sports committed this same intentional act before demonstrates a persistent pattern for which the previous lawsuit in Colorado has not been a deterrent.  Finally, Muse contends that he has a compelling interest in obtaining relief in Iowa, and there-fore, the exercise of jurisdiction in Iowa does not offend notions of fair play and substantial justice.

21

As noted above, Bravo Sports asserts these due process considerations weigh against personal jurisdiction in this Court.  A great majority of the witnesses, including all those from Bravo Sports and RC Sports, are located outside of Iowa.  Continuing in this Court, they claim, would create a great burden greater than the other considerations in favor of jurisdiction.  In short, Bravo Sports contends Muse's assertion of jurisdiction is not reasonable and offends any notion of fair play and substantial justice.

The Court declines to make any determinations related to personal jurisdiction at this juncture.  For the reasons outlined below, the Court finds jurisdictional discovery would be beneficial to Plaintiff and allow him to better support his arguments with facts.  The Court notes, however, that allowing discovery on the issue of jurisdiction is not a ruling on the sufficiency of Plaintiff's *prima facie* case of personal jurisdiction.  Accordingly, the Court will not rule on Defendant's Motion to Dismiss at this time, but will take up the issue after jurisdictional discovery has been completed and the parties are given sufficient time to supplement their filings on this issue.

### 4.  Appropriateness of Venue

In its motion, Bravo Sports also contends that venue is not appropriate in this Court.  While there is diversity of citizenship, Bravo Sports contends that no part of the events giving rise to the claim occurred in Iowa.

Venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(a)(2).  A suit needs not be brought in the "best" venue, rather, a suit needs only be brought where venue is proper.  <u>Wells Dairy, Inc.</u>, 89 F. Supp. 2d at 1054.  Consequently, the correct inquiry in determining appropriateness of venue is whether the venue chosen by the Plaintiff had a substantial connection to the claim, and not whether other forums had greater contacts.  <u>Id.</u> at 1053 (citing <u>Setco Enters. Corp. v. Robbins</u>, 19 F.3d 1278, 1281 (8th Cir. 1994)).

Bravo Sports reiterates that it is a California corporation that does not do business in Iowa. The unauthorized advertisement was run by RC Sports, a company located in Lenexa, Kansas.  In fact, Bravo Sports argues that the advertisement at issue was created and distributed in Kansas and that any harm from the advertisement took place there.  Plaintiff's residence has no impact on determining the events giving rise to the claim, <u>see</u> 28 U.S.C. § 1391(a)(2); and because all of the events giving rise to the claim, i.e., the creation, distribution, and dissemination of the RC Sports catalog, took place outside of Iowa, Bravo Sports charges venue is not proper.[3]

---

[3] Bravo Sports notes that Plaintiff is not without remedy as he may file his lawsuit in a more appropriate forum.

23

Muse asserts venue is appropriate in this Court as the Southern District of Iowa has a substantial connection to the claim.  Muse and his business are located in West Des Moines, Iowa, and Bravo Sports was aware of this through prior dealings with both Muse and Skate West.  Muse contends that as a "world-renowned inline skater . . . it is reasonable to infer that [his] reputation would be well-known and possibly best known in his home state of Iowa."  Muse next reiterates that Bravo Sports would have known that its distributor, RC Sports, advertises and solicits business in Iowa. Further, by causing Muse's image to be placed in the RC Sports catalog as part of a Hyperwheels advertisement, Muse contends Bravo Sports would have known the catalog would have been distributed in Iowa where it could potentially cause the most harm to Muse.  For these reasons, and the additional "continuous and systematic connections" with Iowa that Muse asserts support jurisdiction, Muse contends this Court has the requisite substantial connection with the cause of action alleged to be considered a proper venue for the action.

The Court finds that venue is not a deterrent to trying this action in this Court. If ultimately the Court determines it has jurisdiction over Defendant in this matter, venue will likewise be appropriate as the harm suffered by Plaintiff took place in Iowa and Defendant would have sufficient contacts with the state to justify venue.

**D.**     **Plaintiff's Alternative Motion for Jurisdictional Discovery**

If the Court determines that a *prima facie* showing of personal jurisdiction has

not been sustained, Muse requests the opportunity to conduct jurisdictional discovery.

According to Muse, the facts known to date give rise to additional unknown facts that

are solely under the control of Bravo Sports or under the circumstances are otherwise

difficult to determine without formal discovery.

If a plaintiff presents factual allegations "that suggest with reasonable particu-

larity the possible existence of the requisite contacts between the party in the forum

state," plaintiff's request to conduct jurisdictional discovery should be sustained unless

clearly frivolous.  Toys R Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3rd Cir.

2003).  However, if the "affidavits appear sufficient and it is clear that further dis-

covery would not demonstrate facts sufficient to constitute a basis for jurisdiction,"

discovery on jurisdictional issues should be denied.  Fishel v. BASF Group, 175 F.R.D.

525 (S.D. Iowa 1997).  Such jurisdictional discovery may be used to determine, for

example, the "quantity of contacts" of a website.  See, e.g., Lakin, 348 F.3d at 712-13

(finding it was an abuse of discretion for the district court to deny plaintiff's request for

jurisdictional discovery concerning the "quantity of contacts" of a website).

Muse asserts that he needs jurisdictional discovery to determine the "quantity

of contacts" that Bravo Sports' website has with Iowa residents in order to rebut

Defendant's representations in bringing this lawsuit.  Muse requests the opportunity to conduct discovery to determine the number of times Iowa consumers have accessed the website, the number of Iowa consumers that have requested further information through the website, the number of Iowa consumers that have downloaded catalogs or placed orders through the website, the number of times representatives of Bravo Sports have had contact by telephone or e-mail with Iowa residents after being on the website, and the number and amount of purchases that resulted form Iowa consumers through the website.  See Lakin, 348 F.3d at 712-13.

Additionally, Muse seeks discovery to determine the specific arrangement between Bravo Sports and the 18 "authorized dealers" located in Iowa that are listed on the website.  Moreover, Muse suggests he would be able to obtain needed infor- mation via deposition from RC Sports representatives who orally admitted Bravo Sports created the advertisement at issue and directed RC Sports to run it in its catalog, but would not submit an affidavit due to the relationship between RC Sports and Bravo Sports.  Muse contends all of this information is particularly relevant to the jurisdictional analysis at issue, and requests a reasonable amount of time to conduct such discovery and supplement his resistance to Defendant's motion.

Bravo Sports resists Plaintiff's alternative motion by claiming it serves no useful purpose.  Bravo Sports asserts that all of the information on the quantity of

26

contacts Bravo Sports has with Iowa residents is before the Court via Tony Armand's affidavit.  Bravo Sports contends that Armand's affidavit answers each of the limited areas to which Plaintiff seeks jurisdictional discovery and that any further discovery will be a waste of judicial resources.  It is asserted any further discovery will not demonstrate facts sufficient to constitute a basis for jurisdiction, and Plaintiff's request for such discovery cannot render innocuous his inability to come forward with evidence demonstrating jurisdiction.

Finally, Bravo Sports resists any discovery to support Plaintiff's "stream of commerce" argument as "[t]he mere fact that [defendant's] products are found in [the forum] is insufficient to support a finding of general personal jurisdiction under a stream-of-commerce theory."  Dever, 380 F.3d at 1075 (citing Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 376 (8th Cir. 1990) ("[P]lacement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State."), and Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614-15 (8th Cir. 1998) (finding that a Jamaican brewer, whose beer was distributed in Minnesota, did not have sufficient minimum contacts with Minnesota for the exercise of personal jurisdiction; the plaintiff failed to show that the brewer exercised control over distributors once beer left the foreign country; plaintiff further failed to show that the brewer was licensed to do

27

business in the state, had employees or agents in the state, or maintained bank accounts, phone numbers, or mailing addresses in the state)).  Bravo Sports reiterates its contention that it did not authorize, consent to, or have any knowledge of the advertisement run by RC Sports and thus Plaintiff cannot possibly demonstrate that Bravo Sports purposefully directed its offending activities toward Iowa.  Furthermore, Muse had every opportunity to present contrary evidence in the form of an affidavit from RC Sports but failed to do so despite admitting he spoke with representatives of RC Sports regarding this matter.

Without currently ruling on the sufficiency of Plaintiff's *prima facie* showing of personal jurisdiction, the Court finds it would benefit from the jurisdictional discovery requested by Plaintiff, and a sufficient showing has been made to support the discovery request.  Accordingly, the Court will grant Plaintiff's Alternative Motion for Jurisdictional Discovery and reserve ruling on Defendant's Motion to Dismiss until such discovery has been completed.

## CONCLUSION

For the reasons stated above, the Court hereby **grants** Plaintiff's alternative motion for jurisdictional discovery (Clerk's No. 10).  As a result, the Court **defers** ruling on Defendant's Motion to Dismiss (Clerk's No. 5) until the requested jurisdictional discovery has been completed and the parties have had adequate time to

28

supplement their arguments on this motion.  The Court directs the parties to confer

with regard to a discovery plan and then hold a conference with the Honorable Celeste

Bremer, United States Magistrate Judge, to resolve any remaining disagreement on the

scope and schedule of that discovery and to obtain an order on the parameters of

that discovery.

**IT IS SO ORDERED.**

Dated this 12th day of July, 2005.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT